IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,
          No. 3:12-cr-00373-HZ
          No. 3:18-cv-01550-HZ

Plaintiff,

v.

SAMUEL NAVARRETTE-AGUILAR          OPINION & ORDER

Defendant.

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Kathleen L. Bickers
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902

    Attorneys for the United States of America

/ / /

/ / /

1 - OPINION & ORDER

Samuel Navarrette-Aguilar
FCI Sheridan 74497-065
P.O. Box 5000
Sheridan, Oregon 97378

      Defendant Pro Se

HERNANDEZ, District Judge:

On June 7, 2013, a jury found Defendant Samuel Navarrette-Aguilar, along with his co-defendant Saul Guzman-Arias, guilty of three crimes:  (1) heroin trafficking conspiracy, (2) distribution of heroin, and (3) possession with intent to distribute heroin.  As part of the verdict, the jury answered separate questions relating to the quantity of heroin and whether the distribution of heroin resulted in the death of another person.  The jury found, beyond a reasonable doubt, that the total quantity of heroin agreed to be distributed by each Defendant and any other member of the conspiracy weighed at least one kilogram and that the heroin possessed by each Defendant with the intent to distribute weighed at least one hundred grams.  But, the jury also determined that the use of the heroin distributed by the conspiracy, or by each Defendant, did not result in the death of another person.

In March 2013, Defendant was sentenced to twenty years (240 months) in prison, which was the mandatory minimum sentence resulting from the jury's finding of a conspiracy involving one kilogram or more of heroin.  ECF 177 (Mar. 19, 2014 Judgment).  On appeal, the Ninth Circuit held that even considering the evidence in a light most favorable to the jury's verdict, the Government failed to prove a conspiracy involving one kilogram or more of heroin.  *United States v. Navarrette-Aguilar*, 813 F.3d 785, 794-97 (9th Cir. 2015).  Upon remand for re-sentencing, Defendant was sentenced to 168 months of imprisonment.  ECF 196 (Apr. 5, 2016

Judgment).  An appeal from that Judgment was unsuccessful.  *United States v. Navarrette-Aguilar*, 693 F. App'x 703 (9th Cir. 2017) (rejecting Defendant's argument that his sentence was substantively unreasonable).

Defendant now moves under 28 U.S.C. § 2255 to vacate his sentence.  He also moves for appointment of counsel and requests an evidentiary hearing.  He contends that he received ineffective assistance of counsel during plea negotiations, resulting in his proceeding to trial without sufficient information to make an intelligible decision regarding the Government's plea offer.  I deny the § 2255 motion and further deny the motion for evidentiary hearing and appointment of counsel.[1]

## STANDARDS

I. Section 2255 Motion Standards

Under § 2255, a federal prisoner in custody may move the sentencing court to vacate, set aside, or correct a sentence on the basis that the sentence violates the Constitution or the laws of the United States.  28 U.S.C. § 2255(a); *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citing *Davis v. United States*, 417 U.S. 333 (1974)).  The petitioner must demonstrate that an error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under

---

[1] On January 2, 2019, I ordered the parties to submit supplemental memoranda addressing the timeliness of Defendant's § 2255 motion.  ECF 214.  In response, the Government concedes the motion is timely because, under *Clay v. United States*, 537 U.S. 522 (2003), Defendant had one year from the date the time expired for filing a petition for certiorari with the Supreme Court to file a § 2255 motion and this motion was filed before that date.  ECF 216.

section 2254.").

A district court must grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). In determining whether a § 2255 motion requires a hearing, "the standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Withers*, 638 F.3d at 1062 (brackets and internal quotation marks omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see also Baumann v. United States*, 692 F.2d 565, 571 (9th Cir.1982) ("a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims"). However, conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

Counsel must be appointed to represent indigent defendants in § 2255 proceedings when "the complexities of the case are such that denial of counsel would amount to a denial of due process." *Brown v. United States*, 623 F.2d 54, 61 (9th Cir. 1980) (citing *Dillon v. United States*, 307 F.2d 445, 446-47 (9th Cir. 1962)). Otherwise, the request for counsel is addressed to the "sound discretion of the trial court." *Brown*, 623 F.2d at 61 (internal quotation marks omitted). Factors guiding the court's discretion as to whether to appoint counsel in habeas corpus proceedings include the petitioner's ability to articulate his claim, complexity of legal issues, and likelihood of success on merits. *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per

curiam).

II.  Ineffective Assistance of Counsel Standards

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011).  Under this test, a defendant must prove that counsel's assistance was deficient *and* that the deficient performance prejudiced the defense. *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013) (defendant must show not only that counsel's performance was deficient but that the deficient performance prejudiced the defendant).

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that her or his "representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Id.*

In assessing whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).  Ultimately the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 1048 (quoting *Strickland*, 466 U.S. at 695).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

III. Discussion

A. Defendant's Assertions

At the relevant time in this case, Defendant was represented by attorney Raymond Tindell.[2] Defendant first contends that Tindell was constitutionally ineffective during the plea negotiation process by failing (1) to provide "effective advice concerning a plea," (2) to secure a plea; (3) to explain the plea; and (4) to explain the benefits of pleading guilty. Def.'s § 2255 Mot. at 5 (Ground One), ECF 204. He contends that the "erroneous advice" led to an "unknowing decision to proceed to trial and not accept the plea[.]" *Id.*

---

[2] Defendant was arrested on the charges in this case on December 3, 2012, ECF 36, and made his first appearance on December 4, 2012. ECF 33. Counsel Samuel Kauffman was appointed to represent him at that time. *Id.* Just over one month later, on January 8, 2013, Defendant moved to substitute retained attorney Raymond Tindell as counsel. ECF 37. That motion was granted on January 14, 2013. ECF 39. In his § 2255 motion, ECF 204, Defendant does not identify any counsel by name and does not identify which counsel allegedly provided ineffective assistance. In his Affidavit in Support, ECF 205, Defendant refers to having had two attorneys but does not identify either by name and again does not identify which counsel allegedly provided ineffective assistance. Given that Kauffman represented Defendant for only several weeks at the very beginning of the case, I assume that the ineffective assistance allegations are directed only at Tindell.

6 - OPINION & ORDER

Next, he contends that Tindell was constitutionally ineffective by failing to "apprise and inform" Defendant of the enhancements and sentencing guidelines. *Id.* at 6 (Ground Two). He asserts that had Tindell explained the enhancements and guidelines to him, and how they related and applied to his case, he would not have proceeded to trial and would have accepted the Government's plea offer instead. *Id.*

Defendant next alleges that Tindell was ineffective for failing to explain the "actual consequences" of proceeding to trial and being convicted. *Id.* at 8 (Ground Three). He states that had Tindell explained and informed him of the actual consequences of a jury trial conviction, he would not have proceeded to trial and would have accepted the Government's plea offer instead. *Id.*

Next, Defendant reasserts that because of Tindell's defective advice, he proceeded to trial. *Id.* at 9 (Ground Four). He states that his decision to proceed to trial is "null and void" because it was entered into "unknowingly, involuntar[ily], unintelligent[ly], and unwilling[ly]." *Id.* He alleges that he rejected the Government's ten-year plea deal because Tindell did not properly explain the plea and the benefits of accepting it. *Id.*

Finally, in the last page of the motion filing, on a page designated "iii," Defendant asserts a fifth ground for relief that trial counsel was ineffective for his failure to inform and explain the available options and alternatives during the plea negotiation process.

In support of his § 2255 motion, Defendant submits an Affidavit in which he states that while in custody pending trial, he was held at the "J Units" in the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan) and was visited there twice by trial counsel. Affid. in Sup. ¶ 5. According to Defendant, during one visit, trial counsel indicated that this was counsel's first

case in a federal court. *Id.* ¶ 16. He asserts that trial counsel failed to show "the evidence" to Defendant or explain "the evidence." *Id.* ¶ 6. He further states that he requested to see "the evidence" but trial counsel indicated that the Government did not want to disclose any evidence at that time. *Id.* ¶ 11. Defendant also alleges that he told trial counsel to engage in plea negotiations and to obtain the best possible plea deal. *Id.* ¶¶ 13, 9. He states that trial counsel mentioned a ten-year plea offer but never brought the plea or explained the plea offer any further. *Id.* ¶ 12. And, he contends that he directed trial counsel to obtain a plea offer without the "murder charge." *Id.* ¶ 15. Trial counsel told him that the Government did not want to make that offer. *Id.*

Defendant further asserts that trial counsel failed to inform him of the "actual consequences" of proceeding to trial, although he does not identify more specifically what those consequences are. *Id.* ¶ 7. He states that trial counsel failed to explain the United States Sentencing Guidelines to him and failed to further explain the possible sentencing enhancements based on the charges against him and a jury trial conviction. *Id.* ¶¶ 8, 10. He alleges : "During a hearing before trial a plea was offered by the government and the honorable Court indicated that if too much time to get a better deal,"[3] to which the Government responded "Yes." *Id.* ¶ 14. Finally, he asserts that had trial counsel explained the charges, the evidence, the benefits of pleading guilty, the possible enhancements of a jury trial conviction, and the actual consequences, and had trial counsel engaged in plea negotiations, Defendant would not have proceeded to trial and would have accepted the Government's plea offer or sought the most

_____

[3] The Court quotes directly from Defendant's affidavit, although the meaning of this statement is unclear.

favorable plea offer.  *Id.* ¶ 17.

      B.  Tindell's Assertions

Tindell, who has been practicing law in Oregon for thirty-one years, states in his Declaration that his practice is 75-80% criminal defense work, that he has handled well over 150 jury trials, is a member of the Oregon Criminal Defense Lawyers Association, and is a lifetime member of the National Association of Criminal Defense Lawyers.  Tindell Decl. at 1-2, ECF 212-1.  In contrast to Defendant's assertion, Tindell states that this case was not his first federal jury trial.  *Id.*  Thus, he would not have made such a statement to Defendant.  *Id.*

Tindell states that Defendant retained him after a visit to Defendant at FCI Sheridan.  *Id.* at 2.  Tindell also met with other family members and talked with them about the case.  *Id.* Tindell asserts that Defendant told him that his prior attorney had told Defendant that Defendant had very little chance in the case and that he should cooperate with the Government and work out the best deal possible.  *Id.*  According to Tindell, Defendant insisted from the very beginning that he was going to take this case to trial.  *Id.*  Tindell states that this "is why he hired me." *Id.*  At all times, Defendant wanted to go to trial.  *Id.*  Tindell states that Defendant insisted that because law enforcement officers never found drugs on his person, at his home location, or in his cars, he was not guilty of the offense.  *Id.*  He also told Tindell that because his co-defendant Saul Guzman-Arias was found with a large quantity of drugs at the time of his arrest, and because Guzman-Arias was going to trial, then Defendant "considered that he should go to trial as well." *Id.*

Again disputing Defendant's assertion, Tindell states that he discussed and shared all the discovery in the case with Defendant.  *Id.*  Tindell recalls one visit to FCI Sheridan lasting over

three hours.  *Id.*  "[G]oing over all of the discovery was the most important aspect of such a meeting."  *Id.* at 2-3.  He also met Defendant in Portland and had phone conversations with him.  *Id.* at 3.  Tindell denies telling Defendant that Defendant could not review the discovery.  *Id.*  He asserts that he and Defendant reviewed everything he received from the Government.  *Id.*

Tindell states that Defendant was at all times aware of the conduct for which he was being accused in that he was a co-conspirator and not a possessor of the drugs at the time the arrests took place, but also that he was in possession of a car with a very deep compartment the police determined was used to transport drugs long distance.  *Id.*  Additionally, a police dog hit on items found in the house where Defendant lived and phones in his possession were pinged to his location and were used in drug transactions.  *Id.*

Tindell states that during the May 30, 2013 pretrial conference in this case, the Court "very carefully" addressed the concerns Defendant now expresses.  *Id.*  At the hearing, the prosecutor officially filed and raised the "851 Notice" of prior conviction.  *Id.*  The Court addressed Defendant directly and confirmed his understanding of the consequences of his convictions, including that if Defendant was convicted of either Count 1 or Count 2 and if the Government proved that the substance led to a death of another individual, the Government would seek a life sentence and, if the Government could prove conspiracy to distribute one kilogram or more, the mandatory minimum would double from ten to twenty years with the § 851 Notice.  *Id.*  Moreover, Tindell notes that Defendant was made aware during that pretrial conference that if the Government proved that the conspiracy involved 100 grams or more, then the mandatory minimum would double from five to ten years.  *Id.*  Tindell states that at the May 30, 2013 hearing, Defendant stated that he understood all this.  *Id.*

Tindell further states that while in negotiations, the Government indicated that it was possibly interested in a plea deal involving 120 months, but it would require Defendant to cooperate and proffer information and also agree to accept responsibility. *Id.* at 3-4. Tindell states that Defendant never indicated he wished to cooperate and at no time did he indicate he wished to make a deal of any kind. *Id.* Instead, according to Tindell, Defendant specifically asked Tindell not to pursue a further deal with the Government and to prepare for trial. *Id.* Tindell notes that the case was litigated intensely at the jury trial and because of counsels' efforts on behalf of both Defendants, the jury rejected the Government's contention and instead found that the distribution of heroin did not result in the death of another person. *Id.* at 4. Thus, Defendant avoided a possible life sentence. *Id.* Tindell then affirmatively denies the allegations as set forth by Defendant. *Id.*

C. Effective Counsel at Plea Bargain Stage

A defendant has the right to effective assistance of counsel to decide whether to plead guilty and when to plead guilty. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). Counsel is responsible for accurately communicating a plea deal to a defendant. *Id.* Once the government offers a plea deal, counsel must communicate all aspects of the deal and ensure that the defendant understands the significance of the terms of the deal. *Id.* Failure to communicate a plea deal to a defendant is a deviation from professional standards. *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994); *see also Missouri v Frye*, 566 U.S. 134, 149 (2012) (counsel's failure to make a meaningful attempt to inform the defendant of a plea offer before it expired fell below objective standards of reasonableness).

"If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally

ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." *Leonti*, 326 F.3d at 1117. However, a defendant bears the heavy burden of proving that his or her counsel's advice against a plea deal was beyond reasonable professional norms at the time the plea deal was offered. *See id.* at 1120. If counsel can provide a tactical reason for advising against a plea deal, and that reason fits within reasonable professional norms, then counsel did not act unreasonably. *See id.* (finding that counsel who advised waiting until entire discovery available was a tactical decision within reasonable professional norms given obligation to advise acceptance of a plea deal only after a full investigation of the case is complete).

If a petitioner is able to show that counsel's advice regarding a plea deal was deficient, the petitioner still must show that counsel's advice prejudiced the defense. *See Strickland*, 466 U.S. at 687. If a defendant would not have accepted a plea deal, regardless of his or her counsel's advice, then the defendant fails to show prejudice. *See Lafler v. Cooper*, 566 U.S. 156, 171 (2012) (explaining that courts may "take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions.").

### D. Discussion

While Defendant presents four or five separate grounds for relief, it is clear that they all are based on what he asserts is ineffective assistance of counsel regarding his decision to proceed to trial and not accept a plea deal. His alleges that Tindell was ineffective in just about every possible way: Tindell failed to present the Government's evidence to Defendant, failed to explain the benefits of pleading guilty or the consequences of going to trial, failed to explain the United States Sentencing Guidelines and possible sentencing enhancements based on the charges and a jury trial conviction, and failed to engage in plea negotiations.

Tindell, as is seen from his Declaration, contests all of Defendant's assertions and maintains that he did share discovery, presented the Government's plea offer to Defendant, and effectively represented Defendant.

The transcript of the May 30, 2013 hearing supports some of Tindell's assertions. At that time, the Government notified the Court that it had just served both Defendants with a 21 U.S.C. § 851 Notice of Prior Conviction and that at the conclusion of the hearing, it would formally file those notices in the record. Transcript of May 30, 2013 PTC at 3-4, ECF 160; *see also* ECF 97 (Information to Establish Prior Conviction); ECF 96 (Min. Ord. re: May 30, 2013 pretrial conference). During the hearing, I reviewed the consequences of these filings directly with Defendant. *Id.* at 5-9. After Tindell confirmed that he had reviewed the information of prior conviction with Defendant, I addressed Defendant personally. *Id.* I explained that the document pointed to Defendant's prior conviction which triggered § 851. *Id.* at 5. I explained that if Defendant were convicted in the instant case, and if the Government proved the existence of the prior conviction along with other elements, Defendant would face a mandatory penalty of life imprisonment. *Id.* at 5-7. I also explained that in that circumstance, I would not be able to impose a lesser sentence. *Id.* at 6-7. I further explained that if the jury found that certain heroin quantities were involved, he would face double the mandatory minimum. *Id.* at 7-9. I noted that if the quantity of heroin alleged in the conspiracy was determined to be one kilogram or more, the § 851 prior conviction notice would serve to double the mandatory minimum from ten years to twenty. *Id.* I specifically noted that even if the Government were unable to prove that the particular substance in question caused the death of the victim, there still would be the possibility of a mandatory sentence if certain quantities were determined. *Id.* at 7-9. I also specifically

13 - OPINION & ORDER

noted that if the quantity of heroin alleged was determined to be 100 grams or more, the § 851 prior conviction notice would serve to double the mandatory minimum from five years to ten. *Id.* at 8-9. Defendant repeatedly indicated to the Court that he understood. *Id.* at 6, 7, 8, 9. Tindell also confirmed that he had gone over "all of this" with his client. *Id.* at 8.

With this, even assuming that Tindell failed to provide Defendant with information regarding sentencing enhancements, Defendant cannot show that he was prejudiced in any way. The transcript indisputably shows that he was informed, before trial, of the mandatory minimum sentencing enhancements based on the death of the victim and various quantities of heroin. Defendant fails to identify what specific sentencing enhancements Tindell allegedly failed to explain to him. The ones discussed at the May 30, 2013 hearing are the only enhancements of which the Court is aware. To the extent Defendant's § 2255 motion is based on a failure to properly inform him of sentencing enhancements, he fails to show that any such failure was prejudicial.

Later during the May 30, 2013 hearing, I explicitly discussed with counsel whether counsel had effectively communicated any plea offer by the Government to his client. *Id.* at 12-14. I confirmed with counsel that Defendant nonetheless elected to proceed to trial. *Id.* Tindell reported that he had met with Defendant "numerous times" at FCI Sheridan and had spoken on the phone. *Id.* at 13. He stated that he had "relayed negotiations by e-mail, . . . and [had] documented in [his] file the offers and [his] communications to [Defendant] of those offers." *Id.* at 12-13. Tindell stated that at that time, Defendant was not satisfied with the offer and requested to proceed to trial. *Id.* at 13. During the May 30, 2013 hearing, the prosecutor further stated that in light of the anticipated filing of the § 851 prior conviction notices, she had once

again communicated an offer of ten years to each Defendant and ensured that each Defendant had

rejected the offer. *Id.* She represented that she communicated the offer to counsel and confirmed

that both of their clients rejected the offer. *Id.*

Defendant, who was personally present in the courtroom during this hearing, did not

interject or interrupt to protest that Tindell's statements regarding meeting Defendant numerous

times, communicating offers to Defendant, or Defendant's rejection of those offers, was untrue or

incorrect. Defendant also did not interject or interrupt the prosecutor to challenge her

representation that he had rejected the most recent plea offer of ten years. Defendant made no

statements refuting any of the representations made by his lawyer or the prosecutor. Thus, the

record belies his assertions that counsel failed to engage in plea negotiations or to convey plea

offers to Defendant.

Additionally, Defendant offers conclusory, non-specific, and sometimes contradictory

allegations. He alleges that Tindell failed to show him "the evidence" but he identifies no

specific document, photograph, physical evidence, or testimony. He alleges that Tindell failed to

explain the "actual consequences" of proceeding to trial but he does not specify what "actual

consequences" he refers to. To earn the right to a hearing on a § 2255 motion, a defendant is

required to allege "specific facts." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.

1996). Conclusory allegations such as "the evidence" or "actual consequences" are insufficient.

Defendant also alleges that even though Tindell never explained the benefits of pleading guilty,

Defendant nonetheless instructed Tindell to pursue a plea, suggesting that Defendant believed

there were benefits to a guilty plea. And, although he contends that Tindell did not fully explain

a ten-year plea offer, Defendant nonetheless directed Tindell to obtain a plea offer without the

"murder charge," indicating that Defendant knew specific information about the plea deal. Moreover, this Court's records show that Tindell has had several cases in federal court, adding further support to Tindell's assertions regarding his representation.

While conflicting sworn statements from a defendant and his trial attorney ordinarily trigger an evidentiary hearing if the defendant's version of the facts would entitle him to relief, *see United States. v. Reyes-Bosque*, 624 F. App'x 529, 530 (9th Cir. 2015), the "court may appraise a [§ 2255] petition by what is reasonably credible." *Cassidy v. United States*, 457 F.2d 813, 813 (9th Cir. 1972) (per curiam). Here, the May 30, 2013 pretrial conference hearing, along with the conclusory nature of many of Defendant's assertions, show that Defendant's assertions are not credible. Defendant fails to demonstrate that Tindell's recollection and recitation of events are erroneous.

Accordingly, I deny the § 2255 motion. Furthermore, because Defendant's assertions are not credible, the record conclusively shows he is entitled to no relief and thus, I deny his motion for an evidentiary hearing. Finally, I decline to appoint counsel because the issues are not complex and there is no likelihood of success on the merits.

E. Certificate of Appealability

The Court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).


///

CONCLUSION

Defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 [204] and motion to appoint counsel [206] are denied.

IT IS SO ORDERED.

Dated this ____8____ day of ____Feb_____, 2019

_____Marco Hernandez_____
Marco A. Hernandez
United States District Judge